JOHNSON, Judge.
The plaintiff sued the Clerk of Court of Jefferson Parish, Louisiana, claiming damages occasioned by a certificate which omitted a recorded mortgage. The plaintiff has appealed from the judgment of the Twenty-Fourth Judicial District Court in favor of the defendant.
Plaintiff’s pleadings and evidence reveal that Vincent J. Cipriano made application for a loan to plaintiff to be secured by a mortgage on property in Rose Park Subdivision; that to determine the status of the property plaintiff ordered a mortgage certificate and the clerk of court issued a certificate showing of record only one mortgage in favor of Delta Mortgage Corporation and a paving lien of $365.43 affecting the property; that relying on the correctness of the certificate plaintiff made a loan to Ciprian on February 11, 1963, for $2,520.-00, secured by a mortgage on that property, recorded at that time; that later plaintiff learned that Cipriano had executed a collateral mortgage on said property on October 16, 1962, in the amount of $5,000.00 in favor of Sterling Mortgage Corporation, which collateral mortgage was recorded, but it was not listed on the mortgage certificate; that this collateral mortgage note had not been pledged to secure any debt until July 10, 1963, when Cipriano pledged it to Sterling Mortgage Corporation to secure a loan, and that Cipriano made payments in due course on his indebtedness to plaintiff to reduce the debt to $1,822.00, which plaintiff claims it lost because of the negligence of the clerk of court in failing to list the Sterling mortgage on the certificate as an encumbrance against the property. It is admitted by defendant that the Sterling mortgage, though recorded, was not shown on the certificate, and that the collateral mortgage note was not pledged to Sterling Mortgage Corporation until July 10, 1963.
This narrows the case to one main issue and that is the rank of plaintiff’s mortgage in relation to the Sterling collateral mortgage. We agree with the holding of Judge Stoulig, of the trial court, that the mortgage to Sterling Mortgage Corporation did not become effective as a lien or encumbrance against the subject property until July 10, 1963, which situation resulted in giving plaintiff’s mortgage a preference rank over the mortgage to Sterling Mortgage Corporation. The trial judge gave cogent written reasons for the judgment in favor of the defendant dismissing plaintiff’s suit. We also agree entirely with the judge’s explanation of the facts and the law and we take the privilege of adopting his reasons in full, as follows:
“This matter presents a unique legal proposition. It directs itself to the obligations of a mortgagee to minimize the loss resulting from the failure of the Clerk of Court to report the inscription of an outstanding encumbrance on a mortgage certificate issued by his office.
“Relying on a mortgage certificate, dated February 1, 1963, reflecting an outstanding mortgage to the Delta Mortgage Corporation and a paving lien in favor of the Parish of Jefferson, the plaintiff did, on February 11, 1963, accept a mortgage on certain realty from Vincent J. Cipri-ano, as security for a loan of $2,520.00. It is undisputed that the plaintiff acted in *70 good faith, without any prior knowledge of the outstanding unreported mortgage, nor would it have entered into the transaction, had it known of its existence.
“Subsequently, on May 28, 1964, the plaintiff learned of an outstanding collateral mortgage executed by Cipriano and recorded on October 16, 1962, which had been omitted from the mortgage certificate. Later, on December 14, 1964, the Sterling Mortgage Corporation advised the plaintiff that it had instituted foreclosure proceedings on the unreported mortgage and that the sheriff’s sale, in pursuance thereof, would be held on December 30, 1964. The president of the plaintiff-corporation attended the foreclosure sale, tendered three bids .but was unsuccessful in purchasing the property.
“At the outset it should be noted that the foreclosure proceedings instituted by Sterling Mortgage Corporation was predicated on a promissory note of Cipriano dated July 10, 1963, some five months after the execution of his mortgage to the plaintiff. As security for the payment of the note given to the Sterling Mortgage Corporation, Cipriano pledged his collateral mortgage note bearing the date of October 10, 1962.
“In accordance with the well established jurisprudence of this State and as more recently expressed in the case of Rex Finance Co. v. Cary [La.App.], 145 So. (2d) 672, and affirmed in [244 La. 675] 154 So. (2d) 360, the effective date of a lien on real property resulting from a collateral mortgage is not determined from the date of registry of the collateral mortgage but rather from the date the collateral mortgage note is pledged to secure the payment of a loan or other indebtedness, which, in the instant matter was July 10, 1963. It therefore follows that in truth and fact the plaintiff’s mortgage was superior in rank to the lien rights of Sterling Mortgage Corporation and as such, was entitled to preferential satisfaction out of the proceeds realized by the sheriff from the foreclosure sale.
“A litigant, who has been damaged by the fault of another, has the obligation of minimizing his losses. What then was the duty, if any, of the plaintiff to the defendant in fulfilling this obligation, after learning of the omission from the mortgage certificate?
“It must be conceded that the plaintiff could not have timely brought his action for damages against the defendant until it actually sustained a loss. However, the Court is of the opinion that the plaintiff, in an attempt to minimize his losses, after learning of the unreported mortgage on May 28, 1964, should have immediately communicated this .fact to the Clerk of Court, in order that this officer would be in a position to pursue such a course of action as would tend to overcome or lessen his damages and financial responsibility, resulting from this omission. Further the defendant should have [been] notified by the plaintiff, after it became aware of this fact, of the foreclosure proceeding filed by Sterling Mortgage Corporation and the contemplated sheriff’s sale in connection therewith, so that the Clerk of Court would have an opportunity to initiate whatever proceedings were available to him in protecting himself from liability.
“It is obvious that the plaintiff did not make any effort to assert its preferential right to the proceeds from the sheriff’s sale, nor did it institute any contradictory proceeding to have this right judicially determined. Apparently it had no interest in having the superiority of its. mortgage recognized, being content to rely upon its right of recovery against the defendant.
“The Court therefore concludes that the damages sustained by the plaintiff were not directly or efficiently occasioned by the clerk of court’s failure to report the collateral mortgage but rather were attributable to the failure of the plaintiff to minimize its losses by diligently asserting its rights, as a superior mortgage holder, to the proceeds realized from the *71 sheriff’s sale, or in the alternative, timely disclosing this information to the Clerk in order to afford him the opportunity of avoiding or diminishing his liability, which could have been accomplished by having the courts rank the respective rights of the mortgage holders. Having a direct interest in the outcome of such a proceeding, he would occupy the status of a necessary party.”
We will go a step further and add that the defective certificate caused no loss whatever to plaintiff. Plaintiff already knew about the mortgage to Delta Mortgage Corporation and the paving lien and made its loan subject to them as plaintiff intended. Plaintiff’s security had the exact rank that plaintiff thought it had and intended it to have, though plaintiff’s president and manager, Mr. Blache, testified that had he known about the mortgage to Sterling the loan would not have been made. The loan was made subject to no other encumbrance of higher rank than the ones listed on the certificate. By this position we do not wish to be understood as condoning the clerk’s negligence or as minimizing his duty to issue a true and complete certificate. We only say that the clerk’s failure to perform his duty in this instance resulted in no injury or loss to plaintiff.
Plaintiff has not as yet realized anything from the sheriff’s sale for the very simple reason that plaintiff did not assert its right to be paid by preference according to the rank of its mortgage. Plaintiff’s counsel insists vigorously that plaintiff can rely implicitly and entirely on the language of Article 3394 of the Civil Code, which provides that the parish recorders are “ * * * answerable for injury resulting: 1. From omitting to record such acts as are directed to be recorded in their office. 2. From omitting to mention in their certificates one or several acts existing on their registers, * * In this case there was an omission, but there was no injury. The defendant is only answerable for “* * * injury resulting * * * ” from the omission.
Mr. Blache testified that the first knowledge he had of the existence of the mortgage to Sterling Mortgage Corporation was in May, 1964, when he received a notice from the Referee of Cipriano’s petition in bankruptcy. Plaintiff’s manager examined the schedules and believed that the Sterling mortgage primed plaintiff’s mortgage on the subject property.
It is noted that on the trial of the case the record in civil action No. 81,720, Twenty-Fourth Judicial District Court of Jefferson Parish, was offered in evidence. That record shows that the Sterling Mortgage Corporation filed a suit via ordinaria against Vincent J. Cipriano on March 5, 1964, alleging that it is the owner and holder of Cipri-ano’s note dated July 10, 1963, in the sum of $5,672.32, on which there was due at that time an unpaid remainder of $5,461.25, interest and attorney’s fees; that the said note is secured by a collateral mortgage for $5,000.00, dated October 16, 1962, represented by a note payable to bearer on demand of that date and amount, which note is par-aphed to identify it with the act of collateral mortgage recorded October 17, 1962; that petitioner claims a lien on the subject property and other property. On April 8, 1964, the Sterling Mortgage Corporation obtained a judgment by default for the full amount of its claim and all costs, and the judgment recites: “* * * that petitioner’s special mortgage on the real estate be recognized.” On November 5, 1964, the clerk of court issued a writ of fieri facias. The sheriff seized only that one piece of property covered by plaintiff’s mortgage and advertised it for sale on December 30, 1964. The proces verbal of the sheriff shows the sale was made and the property adjudicated to Sterling Mortgage Corporation for the price of $9,000.00, with costs amounting to $290.55. “The balance, amounting to $8,-709.45, was retained by Sterling Mortgage Corporation and by them credited to the mortgage held by them, which mortgage bears against the property sold * * *” The sheriff’s return further states that “Sterling Mtge. Corp. is acquiring the prop *72 erty subject to the First mortgage. We therefore return the within Writ of Fieri facias to the Court UN SATISFIED.” The sale to Sterling was also subject to the mortgage to plaintiff.
It, therefore, appears, from the facts now before us, that the Sterling Mortgage Corporation has in its hands money sufficient to pay plaintiff by virtue of its mortgage ' with preference rank over the mortgage of the Sterling Mortgage corporation, or, perhaps, plaintiff could foreclose on its mortgage. This property was disclaimed and released from the bankruptcy proceeding.
For these reasons the judgment is affirmed with costs to be paid by plaintiff.
Affirmed.